STATE, APPELLANT, v. LANDRY, RESPONDENT.

(No. 1,934.)

(Submitted November 16, 1903. Decided December 4, 1903.)

*Criminal Law—New Trial—Notice of Motion—Settlement of Bill of Exceptions — Extension of Time—Jury—Drawing Panel—Affidavits—Waiver of Objection—View by Jury.*

1. Under the provisions of the Penal Code, the notice of motion for a new trial in a criminal case need not state whether the motion will be based upon affidavits or upon a bill of exceptions; the stating therein of the grounds upon which the motion will be made is of itself notice of what will be the basis of the motion.

2. Under Penal Code, Section 2171, the power of a district judge, or a justice of the supreme court, to extend the time for the preparation of bills of exception in criminal cases is not dependent upon consent of the county attorney.

3. Where an order granting a motion for a new trial does not specify the particular ground upon which the motion was granted, it will, on appeal, be sustained, if there is merit in any error assigned.

4. A jury panel must be drawn in substantial conformity with the requirements of the statute.

5. The provisions of the Code of Civil Procedure, governing the drawing of a jury panel, are in their essential particulars mandatory, and, being extended to criminal cases by Section 2000 of the Penal Code, it is error, in a criminal case, to draw the jury from box No. 3, before the emergency contemplated by Section 281, Code of Civil Procedure, has arisen.

6. Objection to defendant's affidavits for a new trial because the notary's name is not attached to the jurat is waived by counsel for the state filing counter affidavits controverting some of the matters alleged in them.

7. It is ground for new trial that on an inspection by the jury on a trial for theft of a colt bystanders indicate, by their action and laughter, their belief that the colt did not belong to defendant, but to the prosecuting witness.

8. Allowing the jury on a trial for theft of a colt, under an order for inspection of a mare belonging to defendant, and claimed by him to be the dam of the colt, to inspect the two and a mare belonging to the prosecuting witness, and claimed by him to be the dam of the colt, and to observe the actions of the colt towards the two mares, is ground for new trial.

9. Penal Code, Section 2097, providing that the judge may permit the jury to view the place where the offense was committed, or any other material fact occurred, limits the inspection to inanimate objects.

10. Where the evidence is conflicting it is within the sound discretion of the trial court to set the verdict aside and grant a new trial.

*Appeal from District Court, Powell County; Welling Napton, Judge.*

FELIX LANDRY was convicted of grand larceny, and from an order granting a new trial the state appeals. Affirmed.

*Mr. James Donovan, Attorney General*, for the State.

*Messrs. Nolan & Loeb*, for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant was convicted by a jury of the crime of grand larceny, and was sentenced to a term of one year at hard labor

in the state prison. The larceny charged was that of a certain mare, the property of one Smelzer.

A motion for a new trial was made upon three grounds: (1) That the jury received evidence out of court other than that resulting from a view of the premises and from a view of the mares which they inspected; (2) that the court misdirected the jury in matters of law, and erred in the decision of questions of law occurring during the course of the trial; and (3) that the verdict was contrary to the law and the evidence.

After consideration the court made an order sustaining the motion. The state has appealed.

1. Contention is made by the attorney general that the notice of intention was not sufficient to give the court jurisdiction to grant the order, for the reason that it did not state whether the motion would be based upon affidavits or a bill of exceptions.

The procedure to be observed upon motions for new trial in criminal cases is prescribed by Sections 2190, 2194, of the Penal Code. Section 2194 directs what the contents of the notice shall be. It "must designate the grounds upon which the motion will be made," but there is no requirement that it shall state anything further. The first part of the section declares that, if the motion is made upon any of the grounds mentioned in Subdivisions 2, 3, 4 and 7 of Section 2192, it must be based upon affidavits, otherwise it must be based upon a bill of exceptions. Therefore the grounds stated in the notice are of themselves notice of what will be the basis of the motion.

The attorney general cites in support of his contention *Rutherford* v. *Talent,* 6 Mont. 112, 9 Pac. 886, and *Arnold* v. *Sinclair,* 12 Mont. 248, 29 Pac. 1124. These cases are not in point. They are both civil cases, and, so far as they discuss the contents of the notice, they refer to requirements of former provisions of our Code of Civil Procedure which are obsolete. The former refers to the Revised Statutes of 1879, and the latter to the Compiled Statutes of 1887. There is no such requirement in the present Code of Civil Procedure (Section 1173).

Even if there were, it would furnish no guide in criminal cases, in the absence of some other special provision on the subject, which we do not find.

2. The judgment was pronounced and entered on April 19, 1902. On that day the judge settled a bill embodying exceptions to an order of the court overruling a challenge to the panel of jurors from which the trial jurors were drawn. On April 26th, after the notice of intention was served, the judge made an order extending the time for thirty days from the date of the judgment for the preparation of a bill embodying other matters. On May 16th this time was again extended until May 26th. The bill was presented, upon due notice, to the county attorney, and settled on May 24th—thirty-five days after the entry of judgment. The order of extension in neither case was made by consent of the county attorney. No objection is urged to the action of the court on the bill dated April 19th. But the contention is made that the judge was without power to settle the bill dated May 24th for the reason that the extension of time for thirty-five days was without the consent of the county attorney. Therefore it is said that the motion, so far as it was based upon the bill settled May 24th, should have been denied.

Section 2171 of the Penal Code provides that: "When a party desires to have the exceptions taken at the trial settled in a bill of exceptions, the draft of the bill must be prepared by him and presented, upon notice of at least two days to the county attorney, to the judge for settlement within ten days after judgment has been rendered against him, unless further time is granted by the judge, or by a justice of the supreme court," etc. The power of the judge or a justice of this court to extend the time for the preparation of bills of exception in criminal cases is not made by this section to depend upon the consent of the county attorney; nor is there any other provision applicable. Section 1897 of the Code of Civil Procedure applies in terms only to extension of the time within which an act is to be done under the provisions of that Code. The bill was therefore presented

and settled in time, and was properly used as a basis for the motion.

The order granting the motion does not specify the particular ground upon which the motion was granted. If, therefore, there is merit in any one of the errors assigned, the action of the court must be sustained. (*State* v. *Schnepel,* 23 Mont. 524, 59 Pac. 927.)

3. At the commencement of the trial counsel for defendant interposed a challenge to the panel of jurors on the ground that the names of the persons constituting the panel had not been drawn in the manner required by the statute.

Under the statutes (Sections 243, 263, 265, Code Civ. Proc.) it is the duty of the clerk of the district court to keep three jury boxes, designated as boxes Nos. 1, 2 and 3. In box No. 1 the clerk is required to deposit and keep the ballots containing the names on the jury list prepared by the jury commissioners for the current year. (Code Civ. Proc. Secs. 240-244.) This list comprises the names of the regular jurors. (*Id.* Sec. 245.) In box No. 2 the clerk must deposit from time to time and keep the ballots containing the names of all persons who have served during the year. (Section 263.) Box No. 3 is to contain the names, upon duplicate ballots, of all competent jurors residing in the city or town where the court sits. (Section 265.) Sections 260 to 264 direct when and how the drawing shall be conducted. When the order is made by the court directing a panel to be drawn and fixing the required number (Section 260), the clerk proceeds in the presence of the court to draw from box No. 1 (Section 261). The persons whose names are drawn are then summoned by the sheriff. (*Id.* Sec. 280.) If there are not sufficient names in box No. 1 to make up the required list, the drawing must be continued from box No. 2. Resort can be had to box No. 3 only under the circumstances indicated in Section 281.

Upon the trial of the challenge it appeared that, after the calendar had been called to fix the dates for the trial of causes, the court directed the clerk to draw a panel from box No. 3,

the reason assigned being that there were only two criminal cases for trial at that term. Thereupon this was done, and the persons whose names were so drawn constituted the panel for the term, and the trial jury was drawn from it. It is alleged that this action of the court was erroneous, and prejudicial to the defendant. This contention must be sustained.

A party to an action, if he is entitled as a matter of right to a trial by jury, is also entitled, at the commencement of the trial, to a panel drawn in substantial conformity with the requirements of the statute. This rule has been recognized by this court since the early case of *Dupont* v. *McAdow*, 6 Mont. 226, 9 Pac. 925. When that case was tried, the statute required the panel to consist of twenty-four qualified jurors, and that when this panel became exhausted, but not before, the court might direct the sheriff to summon from the body of the county—and not from bystanders—a panel consisting of qualified persons to furnish the list out of which to complete the jury. The panel at the commencement of the trial consisted of twenty-three persons only. The challenge of the defendant being overruled, and the jury not having been completed, a special venire was issued. The territorial court held this to be prejudicial error, and directed a new trial. Again, in *State ex rel. Root* v. *McHatton*, 10 Mont. 370, 25 Pac. 1046, this court held that a jury panel not drawn in substantial conformity with the statute then in force (Sess. Laws 1889, p. 166) was not a lawful panel, and by *mandamus* directed the district judge of Silver Bow county to proceed in conformity with the statute.

Section 2000 of the Penal Code provides: "Trial juries for criminal actions are formed in the same manner as trial juries in civil actions." The provisions of the sections of the Code of Civil Procedure above cited therefore apply to criminal cases, and, applying the rule laid down in the cases cited, it was error to draw the jury from box No. 3 until the emergency contemplated by Section 281 had arisen. The clear import of this provision is that box No. 3 may not be resorted to at all until it has been ascertained that there is not a sufficient number of trial

jurors present out of the number properly drawn from box No. 1, and that the deficiency cannot be supplied without great delay or expense, for the express statement is: "If a sufficient number of trial jurors, duly drawn and notified, do not attend or cannot be obtained in the opinion of the court, without great delay or expense to form a jury, the court may," etc. These conditions must exist in order that the court may exercise its discretion, otherwise the court has no discretion, but must proceed as directed in Section 262; the evident intent and purpose of the legislature being to guaranty to every person a trial by jury called by lot from the whole body of qualified jurors in the county. If these specific provisions may be treated as directory only, and be disregarded by the presiding judge—as is contended by the attorney general—then juries might be summoned by one judge by open venire and by another by any particular method which he might prefer, and the result would be an absence of that uniform operation of law relating to the courts of the state contemplated by Section 26 of Article VIII of the Constitution, considered in this connection in *State ex rel. Root* v. *McHatton, supra.* "Not every deviation from the law in making a jury list will be cause for challenge to the panel. Many errors are to be overlooked. All that may reasonably be required is that the commissioners, in selecting the names, in good faith substantially comply with the law." (*State* v. *Tighe,* 27 Mont. 327, 71 Pac. 3.) So in drawing the list of jurors to serve at any time there may be irregularities, but a substantial compliance with the law is necessary in order to meet the constitutional requirement.

4. During the progress of the trial, at the request of the defendant, the jury were permitted by the court to go, in the charge of the sheriff, to inspect a mare belonging to the defendant, and alleged to be the mother of the one in controversy; the purpose being, presumably, to allow the jury to note the points of resemblance between the two as described by the witnesses. This feature of the trial furnishes the first ground of the motion. In support of it the defendant filed the affidavits of two persons who were present at the time of the inspection. It ap-

pears from them that there were brought out for inspection not only the mare contemplated by the order, but also the one in controversy, and still another belonging to the prosecuting witness, Smelzer, and alleged by him to be the mother. In the presence of the jury the three mares were turned out, and by the behavior of the younger mare, it is alleged, she indicated a preference for the company of the Smelzer mare. There were present other persons, who, by their laughter and other demonstrations upon the exhibition of the preference of the younger mare for the Smelzer mare, indicated to the jury a belief that the defendant's claim to the young mare was overturned by the testimony of the mare herself.

The attorney general insists that these affidavits should not have been considered by the court, because it appears from their face that they had not been sworn to by the subscribing affiants, the notary public having failed to attach his name to the jurat. Whether the affidavits were in fact sworn to or not is of no moment, though at the time the motion was submitted, and upon objection to a consideration of them, the notary filed his affidavit undertaking in this way to supply the alleged defect. Counsel for the state filed several counter affidavits tacitly admitting all the statements contained in the alleged defective affidavits, except that demonstrations were made by the spectators present at the time of the inspection. Counsel for the state having treated the affidavits as properly sworn to by filing counter affidavits controverting some of the matters alleged in them, they must be held to have waived their right to object to a consideration of them on the ground alleged when the motion came to be heard. They could do this if they chose, just as a defendant in an ordinary action may waive his right to object to a complaint because it is not verified by answering to the merits. The purpose of the requirement that the pleading must be verified is to secure good faith in the pleader, to confine the litigation to matters really in dispute, and thus to avoid false and frivolous issues. (Phillips Code Pleading, Sec. 224; *Johnson* v. *Puritan Mining Co.,* 19 Mont. 30, 47 Pac. 337.) After the issue is made, it is too late to object. The same principle

applies to the formation of issues presented upon affidavits filed in support of a motioin. It does not lie in the mouth of him who has tendered an issue to object that there is no such issue. Instead of joining issue upon the affidavits, counsel should have moved to strike them out, thus seasonably calling the attention of the court to the defects in them.

If the court granted the motion on the ground that persons present indicated to the jury by their actions or the sounds uttered a belief as to the ownership of the younger mare, the order should be affirmed, for we cannot say that the discretion of the court was abused in this regard. Whether these persons intended it or not, the jury, by means of their behavior, received evidence other than that obtained from the inspection and what was communicated to them by sworn witnesses in the court room, and probably determined the merits of the case, in part at least, upon a consideration of such evidence.

The fact that the jury inspected the three animals, while the order referred to one only, and were permitted to observe their behavior, is not included in the grounds assigned for a new trial in the notice of intention. It was discussed at the hearing, however, and for this reason we venture to give it some notice. From this source the jury also received evidence out of court which must have been prejudicial.

In granting the order of inspection the court evidently acted under the authority of Section 2097 of the Penal Code, under which a trial judge may permit the jury to "view the place in which the offense is charged to have been committed, or in which any other material fact occurred." It will be noted, however, that this section limits the inspection to inanimate objects, which can make no manifestations to the jury, and thus furnish additional and independent facts confirmatory of the testimony of witnesses. Even under this section the defendant must be present, and the inspection must be so guarded and hedged about that the jury may not have communicated to them any facts which they may not gain from the inspection alone. They should not be permitted during the inspection to make experi-

ments, to be used by them as independent testimony in determining the rights of the parties. What they see and learn, though it may be used in connection with evidence of witnesses heard in the court room, is to enable them to understand and apply the evidence heard, or to be heard, in the presence of the accused, and in open court. (*Ormund* v. *Granite Mt. Mining Co.,* 11 Mont. 303, 28 Pac. 289.)

5. Independently of the considerations already mentioned, the evidence touching the ownership of the animal was exceedingly conflicting. Under such circumstances it was within the sound discretion of the court to set the verdict aside and grant a new trial under the third ground alleged in the motion. (*Ray* v. *Cowan,* 18 Mont. 259, 44 Pac. 821 ; *Patten* v. *Hyde,* 23 Mont. 23, 57 Pac. 407 ; *Rand* v. *Kipp,* 27 Mont. 138, 69 Pac. 714.)

Objection was made by counsel for defendant that the record furnished to this court by the clerk of the district court is not such as is required by the statute. To obviate this objection, the attorney general submitted a motion for leave to amend. In the consideration of the case we have proceeded upon the theory that the record is sufficient to present the questions considered and decided. Some of the more important questions presented by the motion arise touching the method which ought to be pursued in having the record made up in the district court. The provisions of the Penal Code in force at the time the bill of exceptions was prepared in this case (Sections 2171, 2229), indicating the method by which certain papers used upon the motion for new trial shall be identified and transmitted to this court, have been supplemented by suitable legislation obviating the objections urged. (Session Laws 1903, p. 47.) We have deemed it unnecessary, therefore, to consider and determine any of these questions.

The order appealed from is affirmed.

*Affirmed.*